# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-1371
Filed July 8, 2026

————————————

**Kristin Althoff,**
Plaintiff–Appellant/Cross-Appellee,

v.

**Clair Jecklin and Gary Jecklin,**
Defendants–Appellees/Cross-Appellants.

————————————

Appeal from the Iowa District Court for Dubuque County,
The Honorable Thomas A. Bitter, Judge.

————————————

**REVERSED ON APPEAL, AFFIRMED ON CROSS-APPEAL, AND
REMANDED**

————————————

Sara Riley (argued) of Tom Riley Law Firm, P.L.C., Cedar Rapids, attorney
for appellant.

Christopher C. Fry (argued) and Alyssa M. Carlson of O'Connor &
Thomas, P.C., Dubuque, attorneys for appellees.

————————————

Heard at oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Tabor, C.J.

1

**TABOR, Chief Judge.**

An injured motorist appeals the district court's decision to strike a jury award for $50,000 in future pain and suffering damages. In granting the defendants' motion for judgment notwithstanding the verdict (JNOV), the court decided that plaintiff, Kristin Althoff, did not offer substantial evidence of "permanent injury and how long [she] might continue to suffer" pain in her left hand. On cross-appeal, the defendants argue Althoff was not entitled to damages tied to replacing her specialized vehicle because she did not cover those costs herself. They also argue the jury awarded Althoff duplicative damages. We find Althoff presented substantial evidence of her future pain and suffering and was entitled to both the challenged damage awards.

## I.     Facts and Prior Proceedings

Althoff is a third-grade teacher. Beyond teaching, she works with her brother, Jered, raising Belgian draft horses to show at competitions and fairs. Althoff's mother, Victoria, described her as "a very strong-willed person" who has "worked very, very hard all her life to get where she has gotten."

When she was nine years old, Althoff suffered a life-altering spine injury and was paralyzed from the chest down. She now uses a wheelchair and other adaptive technologies to maintain her lifestyle and independence. For instance, in 2020, Althoff purchased and customized a truck with a motorized door and chair lift. Althoff operates the truck with hand controls. She testified that it took about eight months to get the truck fully adapted for her use.

***The Collision.*** In September 2022, Althoff was driving her truck near Jered's farm when Clair Jecklin ran a stop sign in front of her. Althoff testified that when she realized Jecklin was not stopping, she "slammed on" her

handbrake with her left hand "with as much force as" she could. Still, Althoff "t-boned" Jecklin's car and pushed them both into a ditch. Bystanders called 9-1-1 and helped Althoff as she waited for her brother.

While being treated by emergency responders, Althoff complained of pain and bruising on her shoulder, caused by her seatbelt. She reported no other pain or injury that day and returned to her normal activities almost immediately, helping with chores on her brother's farm, including feeding the horses twice a day.

*Althoff's Truck.* Unfortunately, her truck was inoperable, so she and her family began the process of finding and adapting a new truck. Eventually, they found a suitable used truck in Minnesota, and Althoff—along with her mother and brother—drove Victoria's Jeep north to pick it up. Then, Victoria and Jered drove the truck to an Indiana shop that specializes in adapting vehicles. They then rented a car and drove back to Iowa. A few months later, when the truck was ready, Victoria bought plane tickets to Indiana so that Althoff and Jered could pick it up. They drove the truck back to Iowa and then to another specialist in Grimes for installation of the hand controls. All told, Althoff was without her own vehicle for four months.

*Althoff's Wheelchair.* Meanwhile, Althoff's wheelchair was damaged in the collision. At her appointment for occupational therapy, she identified "issues with the arm rests, brakes, axles, [and] back canes/rigidizer bar." But her insurance would not reimburse her for a replacement chair.[1] Althoff testified that the damage to her wheelchair meant that, instead of "gripping onto the railing" of the wheel, she had to push the tire. She testified that

---

[1] Althoff testified that "at the time of the accident, this chair was only a year-and-a-half old and you're not allowed to get a chair—only every five years."

pushing the tire "tear[s] your skin up" and "[y]ou can get hand sores from it." Jered also noticed that she developed greater calluses on her left hand than on her right.

*Medical Evidence.* In the collision's immediate aftermath, Althoff had no major physical complaints other than her shoulder. But about a month later, she visited her primary care provider, complaining of left arm pain and a reduced range of motion in her wrist. By the time of that October 22 visit, she was struggling to lift things at work and strained when propelling her wheelchair, especially going uphill.

Althoff's primary care provider, advanced registered nurse practitioner (ARNP) Amber Jaeger, ordered x-rays of her arm and shoulder, which revealed no abnormalities. Jaeger next recommended physical therapy, which Althoff started in December 2022, attending appointments and doing home exercises. In physical therapy, she also complained about pain in her left hand. But she reported enough improvement in her pain symptoms by January 2023 to be discharged from therapy. At another check-up later that same month, Althoff complained again of pain in her left hand. ARNP Jaeger noted Althoff reported weakness and numbness in that hand. In April, she ordered an EMG,[2] which was negative for signs of nerve damage. A repeat EMG in September was also negative. But Jaeger testified that the negative EMGs did not mean that Althoff was not suffering pain and weakness.

In March 2025, about a month before trial in this lawsuit, Althoff complained about her left hand again to ARNP Jaeger. She reported weakness in her left hand and wrist, decreased rotation in the wrist, numbness, and tingling. She also reported that her symptoms were worse

---

[2] The record referred to the EMG (electromyography) as a "nerve test."

when she used her wheelchair. From her own observations, Jaeger noted weakness in Althoff's left grip, tenderness on the back side of her hand, and trace swelling but no bruising or redness. Jaeger also recorded good capillary refill, meaning "circulation down into the tips of her fingers" was normal. Jaeger noted "weakness with flexion and extension" of the wrist. As to the cause, Jaeger testified she "assume[d]" that the pain came from the collision because Althoff reported it afterward. Jaeger said Althoff also believes that to be the source of her pain, exacerbated by her wheelchair use. Shortly before trial, Jaeger recommended Althoff see an orthopedic surgeon, but that appointment had not been scheduled yet at the time of trial.

Asked what "crash-related" injuries she had at the time of trial, Althoff said, "Pain in my left hand yet. . . . And weakness." She elaborated:

> [I]t starts in the middle finger. It's mainly in my middle finger, and it runs to the pointer finger and sometimes to the thumb, not necessarily always in the thumb, but it feels almost sometimes like it's been shocked. . . . And, like, the strength in it is not there. Like, I can't pull things. . . . [T]he propelling, the motion of the wheeling on the rims [of the wheelchair], it basically kills me, so I use a different way to wheel.

Althoff testified she experiences pain in her left middle finger daily and pain in her left index finger two to three times per week, making it difficult to grip things and harder for her to push her wheelchair. She occasionally took over-the-counter pain medication. She also admitted that no healthcare provider has given her any restrictions for her left hand, told her she is going to lose the use of her left hand, or determined that she has a permanent injury to her left hand.

Still, Althoff regarded her injury as a significant limitation because she needs her hands to do most things including moving her wheelchair, transferring herself, and other daily activities. And she needs both hands to

have equal strength because both are needed to push her wheelchair.[3] She also testified that she wasn't currently prevented from doing any of those activities because of her hand pain.

***Negligence Action.*** In March 2024, Althoff sued Jecklin[4] alleging negligence. Her action proceeded to trial, with Jecklin stipulating that she was at fault. The jury found Jecklin negligent and awarded the following damages:

| | |
|---|---|
| 1. Past medical expenses | $6,150.70 |
| 2. Past physical and mental pain and suffering | $70,000.00 |
| 3. Future physical and mental pain and suffering | $50,000.00 |
| 4. Replacement cost of cell phone | $1,134.00 |
| 5. Loss of use of plaintiff's vehicle | $30,000.00 |
| 6. Wheelchair replacement cost | $15,700 |
| 7. Rental car expenses | $103.00 |
| 8. Airfare expenses | $380.00 |
| 9. Mileage expenses for replacing vehicle | $3,800.00 |
| TOTAL (add the separate items of damage) | $177,267.70 |

***Post-Trial Motions.*** After the verdict, Jecklin moved for JNOV and new trial or, in the alternative, remittitur,[5] arguing that (1) Althoff failed to

---

[3] Althoff uses a manual wheelchair exclusively rather than a motorized one. She testified that she doesn't want to use a motorized wheelchair because it "puts even more of a label on" her.

[4] Althoff's suit also named Jecklin's father, Gary, as owner of the vehicle Jecklin was driving that day. We refer to the defendants collectively.

[5] "Where damages are not supported by the evidence, the court may order a remittitur as a condition to avoiding a new trial. When ordering remittitur, the court award

present sufficient evidence for the award of future pain and suffering; (2) Althoff could not claim damages for expenses paid by her mother including the rental car, airfare, and mileage; and (3) Althoff could not claim separate damages for loss of use of her truck for the time she was without an adapted vehicle because they were already included in the award for past physical and mental pain and suffering and damages cannot be duplicated.

The district court agreed with Jecklin that Althoff presented insufficient evidence to support an award for future pain and suffering, striking that award. Next, the court found that, even if the expenses were paid by Althoff's mother, a collateral source, the jury found those expenses arose from Jecklin's negligence and allowed the award to stand. Finally, the court found that the damages for loss of use of the truck were not duplicative.

Althoff appeals, and Jecklin cross-appeals.

## II. Scope and Standards of Review

We review the district court ruling granting Jecklin's motion for directed verdict and JNOV for the correction of errors at law. *Hunter v. City of Des Moines*, 34 N.W.3d 484, 495 (Iowa 2026).

The scope of review for Jecklin's motion for new trial depends on the grounds she raised below. *See Whitlow v. McConnaha*, 935 N.W.2d 565, 569 (Iowa 2019). Because she argued that the court misapplied the law regarding

---

should be reduced to the maximum amount proved under the record." *Mowery v. City of Carter Lake*, 961 N.W.2d 739, 751 (Iowa Ct. App. 2021) (cleaned up). Jecklin asked for either new trial on all claims or remittitur to eliminate the awards for future pain and suffering, loss of use of the vehicle, rental car expenses, airfare, and mileage.

damages, our review of the court's denial is for errors at law. *See Roling v. Daily*, 596 N.W.2d 72, 76 (Iowa 1999).

Finally, we review the court's remittitur ruling for an abuse of discretion. *Triplett v. McCourt Mfg. Corp.*, 742 N.W.2d 600, 602 (Iowa Ct. App. 2007). Jecklin must show that "that the trial court's discretion was exercised on grounds clearly untenable or to an extent clearly unreasonable." *Id.* The court abuses its discretion when it misapplies the law. *In re Condemnation of Certain Rts. in Land for Extension of Armar Drive Project by City of Marion*, 974 N.W.2d 103, 111 (Iowa 2022).

## III.    Analysis

### A. Future Pain and Suffering

Althoff first contends the court erred in striking the award for future pain and suffering.[6] We view the jury's verdict in the light most favorable to Althoff. *Hunter*, 34 N.W.3d at 495. And we afford Althoff every legitimate inference that may be reasonably deduced from the record. *Clark v. State*, 7 N.W.3d 740, 749 (Iowa 2024). The question is whether there was substantial evidence—meaning evidence that reasonable minds would find adequate—to support each element of Althoff's claim. *See Griffith v. Kulper*, 31 N.W.3d 171, 178 (Iowa 2026). If there was, the verdict stands. *See Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 221 (Iowa 1998).

---

[6] Althoff challenges error preservation, arguing Jecklin raises for the first time her claim that Jaeger "testified that she did not know what was causing the pain," and never mentioned that in her directed-verdict motion. Both Jecklin's motion for directed verdict and her combined motion for JNOV and new trial asserted that there was insufficient evidence to support damages for future pain and suffering. The issue is preserved. *See State v. Jackson*, 35 N.W.3d 345, 349–50 (Iowa 2026).

The court instructed the jury that if it found Althoff was entitled to recover damages, it must consider each item of damage, including future physical and mental pain and suffering, meaning "[t]he present value of future physical and mental pain and suffering." "Physical pain and suffering may include, but is not limited to, bodily suffering or discomfort." "Mental pain and suffering may include, but is not limited to, mental anguish or loss of enjoyment of life." The jury also received this instruction:

> The amount you assess for physical and mental pain and suffering cannot be measured by any exact or mathematical standard. You must use your sound judgment based upon an impartial consideration of the evidence. Your judgment must not be exercised arbitrarily, or out of sympathy or prejudice, for or against the parties. The amount you assess for any item of damage must not exceed the amount caused by a party as proved by the evidence.

Granting JNOV, the district court found:

> [Jecklin] correctly argue[s] that generally expert testimony is required in order to prove future pain and suffering. The exception is the situation where a plaintiff has suffered a permanent, severe, serious injury which will likely cause future pain and suffering. Statements by the plaintiff alone that she still suffers pain are not sufficient to warrant a finding that there will be future pain or physical suffering because of the injuries.
>
> . . . .
>
> Here, there was no medical testimony about any permanent injury. There was no medical testimony regarding how long [Althoff] may expect to continue to suffer from any condition brought about by the accident. The jury would have no way of knowing whether [Althoff] might reasonably expect to suffer for another week, month, year, or the rest of her life.

Althoff complains that the district court imposed too high a burden by requiring direct medical testimony and discounting her subjective symptoms. The general rule is that "recoverable damages for permanent injury or future

pain and suffering must be such only as are reasonably certain." *Daniels v. Bloomquist*, 138 N.W.2d 868, 873 (Iowa 1965).

For reasonable certainty, plaintiffs must show their injury or condition is either permanent or that suffering will continue for an indefinite time. *See id.* at 872–73; *see also Holst v. Stapleton*, No. 17-1270, 2018 WL 5292091, at *4 (Iowa Ct. App. Oct. 24, 2018). "The mere statement by the plaintiff that she still suffers pain is not sufficient per se to warrant a finding that there will be any future physical suffering because of her injuries." *Shuck v. Keefe*, 218 N.W. 31, 34 (Iowa 1928).[7]

But expert testimony is not always required. "[F]uture pain and suffering, or the permanency of injuries, may in some cases be inferred from the nature of the injury alone." *Daniels*, 138 N.W.2d at 873. For example, in *Two Rivers Bank & Trust v. Atanasova*, the United States Court of Appeals for the Eighth Circuit, applying Iowa law, rejected an argument that the plaintiff failed to establish future pain and suffering damages when the court admitted her medical records without expert testimony about the future effect of her injuries. 686 F.3d 554, 565 (8th Cir. 2012). Those records included x-ray film of her spinal fracture and testimony of the physician who treated her the night of her accident. *Id.* The circuit court found sufficient "objective evidence of her injury, from which the jury could infer ongoing and future pain as confirmed in the medical records and bills following the accident." *Id.*

If objective evidence establishes an injury, testimony on the plaintiff's subjective symptoms can allow the jury to infer the duration and severity of

_____

[7] On this point, the district court cited a North Dakota Supreme Court case, *Olmstead v. Miller*, 383 N.W.2d 817, 821 (N.D. 1986)—but mistakenly attributed the holding to the Iowa Supreme Court. Althoff brought this to the court's attention in her motion to reconsider, which the district court denied.

future pain and suffering with reasonable certainty. For example, in *Arenson v. Butterworth*, our supreme court held that—despite no expert testimony on future pain and suffering—evidence that the plaintiff had not yet fully recovered from her back and wrist injuries and continued to experience severe pain at the time of trial was sufficient to submit future pain and suffering to the jury. 54 N.W.2d 557, 562–63 (Iowa 1952).

That principle also appears in *Mabrier v. A.M. Servicing Corp. of Raytown*, 161 N.W.2d 180, 183 (Iowa 1968) ("[W]hen pain is suffered right up to the time of trial and there is evidence plaintiff has not fully recovered, future pain and suffering may be submitted to the jury without medical testimony."). In *Mabrier*, the plaintiff's doctor testified that she "would have permanent physical impairment in her left lower extremity" after a slip-and-fall at the defendant's business. *Id.* But the record did not include medical evidence about future pain. *Id.* Still, the supreme court held that the jury was permitted to decide future pain and suffering based on the plaintiff's pain reports and other subjective evidence. *Id.*; *see also DeBurkarte v. Louvar*, 393 N.W.2d 131, 139–40 (Iowa 1986) (applying *Mabrier* to find substantial evidence of future suffering from doctor's testimony that considerable pain is likely from the spread of terminal breast cancer and from the plaintiff's testimony of her experiences with treatment up to the time of trial).

In Althoff's case, the district court found that she "did not prove the existence of any permanent or severe injury" and "did not present sufficient expert testimony to support an award of future pain and suffering." We view the record differently and find substantial evidence for the jury's award.

Granted, Althoff did not seek treatment for her hand injury right after the accident. Rather, she first complained of pain in her left arm and shoulder. That pain resolved with physical therapy. But at physical therapy, she also

pointed to pain in her left hand. Althoff reported the same to ARNP Jaeger. And although x-rays and EMG revealed no abnormalities, Jaeger recorded objective findings of abnormality—including weakness in left-handed grip, trace swelling, and weakness in flexion and extension of that wrist. Jaeger testified that Althoff's condition was likely exacerbated by the adaptations she made to operate her damaged wheelchair.

Althoff also testified that she experiences daily pain that makes it hard to grip things and harder for her to push her wheelchair. In addition to pain, she experienced weakness, numbness, and tingling in her hand and wrist. Althoff had been experiencing pain in her hand for two years at the time of trial.[8] When viewed in the light most favorable to Althoff, a jury could reasonably infer Althoff suffered a permanent injury or condition in her left hand. As a baseline, the jurors heard ARNP Jaeger's objective findings of abnormalities to her hand caused by the accident. From there, Althoff detailed her subjective symptoms, pointing to their origin and duration.

As to treating future pain, Althoff conceded that she was not pursuing future medical expenses because she did not know what those would be. But we do not think forgoing medical-expense damages precludes a finding of future pain and suffering if an award is supported by substantial evidence. Althoff experienced pain in her hand "right up to the time of trial." *See Mabrier*, 161 N.W.2d at 183. Jaeger confirmed that Althoff's hand pain was

---

[8] Althoff cited observations from her mother, brother, and friend as objective proof of her pain. For instance, Victoria testified it is hard for Althoff to pick things up and doing so causes her daughter pain. Jered testified he discerns his sister is in pain when she looks "pale" and her fingers feel "ice cold." Friend Jill Berger testified she can tell when Althoff's hand is bothering her as she stretches out her arm and rubs her hand. We don't rule out that the jury might consider these observations to be additional objective evidence of Althoff's pain.

attributable to the accident, along with overuse.[9] And her referral to an orthopedic surgeon, though not scheduled as of trial, lends to the inference that Althoff's hand injury remained unresolved.

Beyond her physical pain, Althoff presented evidence of her mental suffering. She testified the pain "hasn't improved since the accident. It's actually gotten worse, and I guess my biggest fear is if I lose more, I won't be able to continue my daily life. I mean, I will, but it takes more away from me. . . . More independence." Althoff testified that she values her independence and relies on both her hands to maintain it. Jered also testified that his sister worries that the pain will never go away and that he has witnessed her "emotional roller coasters" since the collision.

We conclude that the jury's award of future pain and suffering was supported by substantial evidence, so we reverse the grant of JNOV.

## B. Third-Party Expenses or Collateral Source

In her first cross-appeal claim, Jecklin contends the district court erred in allowing damages for travel expenses paid by Althoff's mother. Those costs included the rental-car fee and airfare that Victoria paid helping Althoff replace her truck. Jecklin argues that Victoria is not a plaintiff in the lawsuit and Althoff is only entitled to recover her actual losses. Jecklin also argues that Althoff has no legal obligation to repay her mother and suffered no economic detriment from those expenses.

---

[9] Jaeger agreed that getting a new wheelchair would "potentially help" Althoff by alleviating the overuse concern. Althoff testified that her insurance would not replace her wheelchair until 2026. But she also requested, and the jury gave her, an award for replacing the wheelchair.

The district court ruled,

> The jury was told that [Althoff]'s mother paid those expenses, and the jury reasonably found that they were expenses brought about by [Jecklin]'s negligence. (Instruction No. 12 told the jury that the conduct of a party is a cause of damage when the damage would not have happened except for the conduct.) Even if those costs were paid by a collateral source, they are the responsibility of [Jecklin] due to her negligence.

The court cited the collateral source rule, under which "a tortfeasor's obligation to make restitution for an injury he or she caused is undiminished by any compensation received by the injured party from a collateral source." *Schonberger v. Roberts*, 456 N.W.2d 201, 202 (Iowa 1990). Jecklin argues that rule does not apply because Althoff did not incur the expenses.

We agree that the collateral source rule supports Althoff's recovery. That rule can sometimes result in "double dipping" when the plaintiff has also received insurance, sick pay, or workers' compensation. *Collins v. King*, 545 N.W.2d 310, 311–12 (Iowa 1996). But generally, third parties, whether motivated by "affection, philanthropy or contract," cannot relieve tortfeasors of their obligation to compensate the injured person for damages they caused. *Clark v. Berry Seed Co.*, 280 N.W. 505, 510 (Iowa 1938). Thus, Althoff is entitled to an award for those costs. We find no error of law or abuse of discretion in the district court's ruling.

### C. Loss of Use of Vehicle

In her second cross-appeal claim, Jecklin urges that the court allowed a double recovery by upholding the jury's award of damages for both past physical and mental pain and suffering *and* for loss of use of her truck. Jecklin asserts: "[T]he inconvenience, frustration, and limitation of activity due to the loss of a specialty vehicle are merely specific examples of . . . general

mental pain and anguish," which "invited the jury to compensate [Althoff] twice for the same experience of suffering."

As a rule, plaintiffs cannot get damages twice for the same loss. *See Nassen v. Nat'l States Ins.*, 494 N.W.2d 231, 236–37 (Iowa 1992). Courts guard against duplicative or overlapping awards. *Team Cent., Inc. v. Teamco, Inc.*, 271 N.W.2d 914, 925 (Iowa 1978). Jecklin points to *Poyzer v. McGraw*, where the court disallowed separate awards for "loss of enjoyment of life" and "future pain and suffering." 360 N.W.2d 748, 753 (Iowa 1985). She argues that, similarly, loss of the use of Althoff's truck is included in the jury's award for past mental suffering.

Althoff presented a wealth of evidence about the consequences of losing the use of her truck—both the physical strain and the impact on her mental health. The jury was instructed: "A party cannot recover duplicate damages. Do not allow amounts awarded under one item of damage to be included in any amount awarded under another item of damage."[10] We see no reason to believe that the jury failed to follow its instructions. The court also instructed the jury that pain and suffering related to the "injury," which does not necessarily include the prolonged unavailability of Althoff's truck, curtailing her independence, which the jury could reasonably view as a different loss. The district court declined to reverse the award, finding the jury was properly informed. We find no error.

---

[10] Our court approved an identical instruction in *Lanczos v. Walker*, No. 11-2101, 2012 WL 5355959, at *6 (Iowa Ct. App. Oct. 31, 2012). The plaintiff submitted multiple theories of recovery, and the jury awarded damages on one and nothing on another. *Lanczos*, 2012 WL 5355959, at *6. Our court found the jury did not render inconsistent verdicts but followed the instructions. *Id.* at *6–7.

## IV.   Conclusion

To sum up, the district court erred in finding the record lacked substantial evidence to support the verdict for future pain and suffering. But we find no error in the court's conclusions that Althoff was entitled to damages for costs related to replacing her vehicle and for the loss of use of her vehicle. Thus, we reverse on Althoff's appeal, affirm on Jecklin's cross-appeal, and remand for entry of judgment on the verdict.

**REVERSED ON APPEAL, AFFIRMED ON CROSS-APPEAL, AND REMANDED.**